SAMUEL MIX *against* JOEL WHITLOCK.

*Elnathan Keyes* and *Daniel Chipman*, for plaintiff.
*Wm. C. Harrington*, for defendant.

The *rate-bill*
necessary to be
produced to
maintain a ti-
tle under the
30,000 dollars
tax act.

THIS was an action of ejectment brought to re-
cover the possession of Lot No. 75, on the *South
Hero*, drawn to the right of *James Hopkins*, an ori-
ginal grantee under the charter made by the govern-
ment of the State.

The cause went to the Jury under the general issue.

*Keyes* stated, that in support of the plaintiff's title he should rely upon the proceedings and deed of the constable, *ex officio* collector of *South Hero*, who had legally granted the lands described in the declaration to the plaintiff's ancestor, under the authority of an act passed *November* 3d, A. D. 1791, entitled, " An act for the purpose of raising thirty thousand dollars." *Vermont* Stat. vol. 2. p. 237.

He then read a charter issued by the Governor of the State, conformable to law, dated 27th *October*, 1779, granting the islands in Lake *Champlain*, called the *Two Heroes*, to certain associates, among whom the name of *James Hopkins* was inserted.

He then offered in evidence a deed executed by *Isaac Adams*, constable and collector of *South Hero*, conveying the first division of the original right of *James Hopkins*, original grantee in *South Hero*, to *Charles Lafflin*.

*Harrington*, for the defendant, objected to this deed being read in evidence, as the grantor had not in the deed either recited his proceedings at large, or set forth that he had in all things pursued the directions of the statute.

*E. Keyes*, for plaintiff, admitted this to be necessary, unless he could shew the requisite proceedings from the doings of the constable. He then read a warrant in usual form from the Treasurer of the State, directed to the constable of *South Hero*, commanding him to collect a tax of one halfpenny on each acre of land in *South Hero*, pursuant to the statute above

mentioned, and was proceeding to read in evidence certain public newspapers to prove the publication of the tax agreeably to the requirement of the act.

*Harrington*, for the defendant, contended, that previous to the reading these publications to the Jury, it was incumbent upon the plaintiff to exhibit the rate-bill required by the act to be made out by the selectmen, and delivered to the constable as collector. He read part of the first section of the act, which enacts,

" That upon receipt of the Treasurer of the State's warrant, the constables shall give notice to the selectmen of their respective towns, who shall on or before the first day of *March*, 1793, make out and deliver to such constable *a rate-bill*, containing a list of all the lands in such town held in severalty, and the number of acres contained in each lot, and the range in which it lies, or the division to which it was drawn or pitched, and the tax to be paid on the same; and where there are undivided lands in such towns, the said selectmen shall, under their oath of office, make an estimate of the quantity of land so undivided to the best of their judgment, which, together with all other lands in such towns, they shall form into one general list, and return an attested copy thereof on or before the first day of *November (then)* next following to the Treasurer of the State; and the selectmen shall assess each landholder or proprietor for the quantity which they respectively own, both divided and undivided, in one sum annexed to their names respectively; and when any land-owner or proprietor shall pay his proportion of said tax, it shall be the duty of said constable to make an indorsement on his

*rate-bill*, of the name of the person so paying the tax, and their lands shall thereupon be discharged therefrom ; and if the sum assessed shall not be paid on or before the first day of *September*, 1793, such constable shall give notice by advertisement in all the newspapers printed in this State," &c.

Mix
v.
Whitlock.

*Daniel Chipman*, for the plaintiff, insisted that it was not necessary to produce the *rate-bill* as any part of the evidence to support the plaintiff's title. The warrant from the State Treasurer was in itself the sole and complete commission for the proceedings of the constable, in which no direction was given to the constable to apply to the selectmen for such *rate-bill.* He conceded that it was the selectmen's duty to assess, and that they might be indicted for nonfeasance; yet if such assessment or rate-bill was not made, it would not defeat the plaintiff's title, as the object of such assessment was not the benefit of the landholder or proprietor, but merely the convenience of the constable or collector, pointing out the portions or divisions in which he might vend the land. He argued, that if the Legislature had contemplated the assessment or rate-bill as constituting any link in the chain of title to lands vended under the act, they would have directed it to be recorded in some public deposit, to which the feoffee of the land under the vendue might at all times have had access.

*Harrington*, for the defendant, in reply, contended, that when a common law right is defeated by statute operation, such statute ought to be pursued strictly ; that though it might be true that the Treasurer's

5

warrant did not direct the constable to apply to the selectmen for the rate-bill, yet the same warrant referred to the act, was itself a creature of the act, and in connection with it constituted the constable's power to vend the lands of delinquents; that by the act the constable's application to the selectmen for a rate-bill became so necessary, that he could not proceed in his duty without it; that the assessment and rate-bill were equally a convenience to the landholder or proprietor as to the constable or collector, furnishing an indisputable statement of what the former had to pay and the latter to collect; that there is no deposit of record, for the rate-bill provided by the act is correct; but it is not more necessary to record the rate-bill than the proceedings of the vendue, which it is undoubtedly necessary to produce in support of the plaintiff's title; but it appears there is a provision made in the statute, that the selectmen should forward an attested copy of the assessment and rate-bill to the Treasurer of the State, which might be resorted to in cases of exigency.

By the Court. The rate-bill must be produced in evidence. It constitutes in this case an essential part of the plaintiff's title.

*Keyes* then moved for a continuance of the cause, alleging, that the plaintiff had subpœnaed the constable with a *duces tecum*, commanding him to bring with him his proceedings under the act; that the constable was present, but had unfortunately omitted to bring the rate-bill, and it operated a surprise upon his client.

By the Court. Let the cause be continued. And the Clerk make a docket minute, that the plaintiff tax no costs for the present term.